IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWARD WASHINGTON | : | CIVIL ACTION |
| | : | NO.  11-01331 |
| v. | : | |
| | : | |
| CLIENT NETWORK SERVICES, | : | |
| INCORPORATED (CNSI) and | : | |
| NATIONAL RAILROAD PASSENGER | : | |
| CORPORATION (AMTRAK) | : | |

O'NEILL, J.                                                                                           April 20, 2016

## MEMORANDUM

This is an employment discrimination matter.  Defendants Client Network Services, Inc. (CNSI) and National Railroad Passenger Corporation (Amtrak) now move to dismiss the third amended complaint of plaintiff Howard Washington, who is proceeding pro se.[1]  Before the Court are defendants' motions (Dkt No. 108 and Dkt. No. 109, respectively), plaintiff's response (Dkt. No. 116, Dkt. No. 116-1), CNSI's reply (Dkt. No. 117), plaintiff's response supplement (Dkt. No. 119), CNSI's supplemental reply (Dkt. No. 120), plaintiff's motion for judicial notice of third E.E.O.C.-P.H.R.C. charge (Dkt. No. 122), Amtrak's reply (Dkt. No. 123), plaintiff's "letter to the Honorable Thomas N. O'Neill Jr." (Dkt. No. 124), plaintiff's "acknowledgement of receipt of defendant Amtrak's response in support" (Dkt. No. 125) and plaintiff's response in opposition to Amtrak['s] motion to dismiss his third amended complaint.  Dkt. No. 126.  For the reasons that follow, the Court will grant defendants' motions.

---

[1] Plaintiff asserts that he seeks relief on behalf of himself "and/or other putative class members, who have been subjected to disparate treatment and/or otherwise harmed by the Defendants' intentionally discriminatory employment policies and practices and the disparate impact resulting there from [sic]."  Dkt. No. 104 at ECF p. 1.  However, as the Court of Appeals has explained "he has not requested class certification and pro se litigants generally are not adequate class representatives."  Washington v. Client Network Servs. Inc., 590 F. App'x 126, 127 n.1.  (3d Cir. 2014).

**BACKGROUND**

The Court previously dismissed Mr. Washington's Second Amended Complaint. See Washington v. Client Network Servs., Inc., No. 11-01331, 2013 WL 3819381 (E.D. Pa. July 24, 2013). Plaintiff appealed and on November 4, 2014, the Court of Appeals for the Third Circuit vacated my order of June 27, 2013, vacated in part my order of July 24, 2013 and remanded this matter for further proceedings consistent with its opinion. Washington v. Client Network Servs. Inc., 590 F. App'x 126 (3d Cir. 2014). More specifically, the Court of Appeals vacated this Court's determination that plaintiff had not sufficiently pled exhaustion of his administrative remedies, holding that "it would be premature to resolve the timeliness and adequacy of Washington's submission to the EEOC at this stage." Id. at 129. The Court of Appeals also held that, if appropriate on remand, this Court should give consideration to the doctrine of equitable tolling given that "Washington argued expressly and at length that he is entitled to [it] because, inter alia, the EEOC mishandled certain of his alleged charges in various respects." Id. The Court of Appeals also vacated this Court's ruling that Mr. Washington had not adequately alleged that Amtrak was an "employer," citing "the concept of joint employment" and explaining that "the precise contours of an employment relationship . . . may generally require resolution at the summary judgment stage, rather than at the motion to dismiss stage." Id. at 130 (citations and internal quotations omitted). Finally, the Court of Appeals "acknowledge[d] that Washington's voluminous filings [were] not models of clarity and that his allegations of discrimination [were] largely conclusory," but found that the question of whether Washington's second amended complaint failed to state a plausible claim for relief – an issue which my prior decisions did not reach – "warrants consideration by the District Court." Id. at 131.

On remand, this Court entered an Order dismissing Mr. Washington's second amended

complaint for failure to state a claim, explaining that he had

> not pled sufficient facts from which it could be inferred that defendants' alleged discriminatory conduct was the result of his race, national origin, age, gender, disability or religion. See, e.g., Dkt. No. 37 at ECF p. 15-16 ("because of my race, color, sex, religion and other protected factors I was subjected to discrimination, segregation, harassment, threats, reprisals, unequal pay, hostile work environment, retaliation, and other wrong and unfair treatment in virtually every aspect of my employment with CNSI during my assignment to the Amtrak EAM Help Desk, and since my involuntary resignation.").

Dkt. No. 87 at ECF p. 2.  The Court found that, "[e]ven liberally construed, . . . plaintiff's allegations f[e]ll short of the level of specificity required 'to state a claim for relief that is plausible on its face' . . . ."  Id.  The Court granted plaintiff leave to amend "in order to provide him with an opportunity to amend his complaint in conformance with the Federal Rules of Civil Procedure to include the specific facts that [are] required to permit his claims to withstand a motion to dismiss."  Id. at ECF p. 3.  The Court "stress[ed] for the plaintiff the importance of clarity and organization, keeping in mind the goal of placing defendants on notice of the claims being asserted against them."  Id.  The Court also reminded Mr. Washington that

> any third amended complaint must conform with the requirements of Rule 8 of the Federal Rules of Civil Procedure which requires that a complaint contain allegations that are "simple, concise, direct" and that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."

Id. at ECF p. 3 n.3, citing Fed. R. Civ. P. 8(a) and 8(d).

On September 14, 2015, after several extensions of time to permit plaintiff to seek counsel (albeit without success) and to amend his complaint, plaintiff filed his four-page long third amended complaint.[2]  Dkt. No. 104.  Mr. Washington then filed around three hundred

---

[2] The third amended complaint includes a reference to "Attachment(s) 294-page document previously submitted to EEOC," but no documents were attached when the document

pages of further supporting documents on September 29, 2015.³  Dkt. No. 106.  Plaintiff endeavors to incorporate his attachments into his third amended complaint through his assertion that "[t]o the extend [sic] necessary and permitted, this Third Amended Complaint incorporates the extant records on file in the district and appeals courts, plaintiff's original, first and second amended complaints (which were properly served on defendants) by reference as if set forth at length herein."  Dkt. No. 104 at ECF p. 2.

In the body of his third amended complaint, plaintiff alleges that he is "a male individual over fifty years of age, American Negro descendant of African slaves, whose faith is based on the belief that Jesus Christ is the Lord, Savior and a High Priest of the Order of Melchisedec . . . ."  Dkt. No. 104 at ECF p. 3.  He alleges that he "sought employment or was employed by the defendant(s)" at "Amtrak's 30th street facility."  Id.  He also alleges that he "was employed by Defendant CNSI from on or about May 8, 2006 until on or about May 5, 2008, the date of his unlawful constructive discharge."  Id.  He asserts that "[d]uring the course of his employment with the Defendant(s), Plaintiff Washington held the position of Help Desk Analyst I, until he was 'secretly' promoted to the position of Help Desk Analyst II."  Id.  He contends that he "maintained an excellent job performance rating" at all relevant times.  Id.

Plaintiff alleges that

> [b]eginning on the first day of his employment with CNSI at Amtrak, CNSI/Amtrak Managers and employees, including:  Steve Strong, John Zachmann, Maya Chaves, Cherylle Nebel, Matthew Hoffman, Williams Bates, William Balleste, Enrique Castillo, Valerie Marcolongo, William Broughton, Lonny Stevenson, Willem Ebersohn, Conrad Rupport, Michael Calderone, Et Al. [sic], discriminated, retaliated, subjected him to a hostile and

---

was filed.  Dkt. No. 104 at ECF p. 4.
   ³   Mr. Washington explained that he "forgot that he had to convert documents to pdf format," presumably when he attempted to file them along with his third amended complaint. Dkt. No. 106-1.

-4-

> dangerous work environment, because of his race, color, sex, religion, age, national origin, and other similarly prohibited considerations . . . .

Id.  Plaintiff contends that defendants did this

> by creating a pool of contract and temporary employees of which he was a member (including Elaine Faro – white female under 40, Kevin Trusty – negro (possibly mixed race) male under 40, Rachel Weiss – white female under 40, Reginald Folks – negro (in appearance) male under 40, Shanni Lewis – negro (in appearance) female under 40 and others[)]; then giving preferential treatment to each of these other employees including benefits, hiring, promotions, training and all other aspects of employment and/or as otherwise averred and demonstrated in the attachment(s) and other relevant parts of the record.

Id. at ECF p. 3-4.  He also alleges that

> Defendants intentionally discriminated against plaintiff through policies, patterns and/or practices, and that Defendants are liable based on agency principles, and that Defendants' conduct constitutes discriminatory animus, disparate treatment, reprisal, retaliation and/or hostile work environment, and/or has had a discriminatory impact on the plaintiff and a class of similarly situated African-American (and/or non-Caucasian employees, all of whom the plaintiff and/or purported class members allege were adversely affected by discriminatory treatment/impact, retaliation and a hostile work environment at Defendants' Philadelphia, Pennsylvania facility, because of and/or with respect to my race (nappy headed American Negro descendant of African slaves), my national origin/ancestry (American Negro descendant of African slaves), my color (brown skinned), my sex/gender (straight male), my age (over fifty years of age), my religion (faith based on the belief that Jesus Christ is Lord, Savior and a high priest of the Order of Melchisedec).

Id. at ECF p. 2.  Mr. Washington contends that "[t]he discriminatory and/or other acts complained of occurred and/or continue to occur on or about:  May 8, 2006 to May 5, 2007, and or May 8, 2006 to present."  Id. at ECF p. 2.  He also cites "Defendant CNSI's discriminatory and retaliatory opposition to plaintiff's claim for unemployment compensation . . . and CNSI's obstructive Cease and Desist letter . . ." which he contends "are retaliatory actions against the

-5-

plaintiff for his antidiscrimination activities" and alleges that "both of these have harmed and continue to harm his future employment opportunities." Id. at ECF p. 3.

Plaintiff asserts that his

> action is brought pursuant to the Constitutions of the United States and the State of Pennsylvania and amendments thereto (First, Fourth, Fifth, Thirteenth and Fourteenth Amendments), Title VII of the Civil Rights Act of 1964, 42 U.S.C. 200(e) et seq., as amended by the Civil Rights Act of 1991, at 42 U.S.C. 1981(a) ("Title VII"), 42 U.S.C. 1981, 1981a, 1982, 1983, 1985, 1986, and 1988, Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C. et seq., "Rehabilitation Act of 1973 29 U.S.C. § 701 et seq., Americans with Disabilities Act of 1990 ("ADA"), as amended 42 U.S.C. 12112 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. 951 et seq., the Hobbs and Sherman Acts, and the Racketeer Influenced and Corrupt Organizations Act (RICO) section 901(a) of the Organized Crime Control Act of 1970 (Pub.L. 91-452, 84 Stat. 922, enacted October 15, 1970).

Dkt. No. 104 at ECF p. 1.

As relief, Mr. Washington "seeks punitive and compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses in excess of the amount of $75,000 together with attorney fees and court costs, backpay, interest on backpay . . . ." Id. at ECF p. 4. Plaintiff also asks for "such relief as may be appropriate, including injunctive orders" and asks the Court to

> Direct the defendant to hire the plaintiff, Direct the defendant to re-employ the plaintiff, Direct the defendant to promote the plaintiff, Direct the defendant to reasonably accommodate the plaintiff's disabilities, Direct the defendant to reasonably accommodate the plaintiff's religion, Direct the defendant to take other and further actions to make plaintiff whole.

Id.

The attachments Mr. Washington filed on September 29, ranging in date from 2006 through at least 2009, are a lengthy string of (apparently re-formatted) email communications

along with a number of other documents, such as Unemployment Compensation Board of Review transcripts,. <u>See</u> Dkt. No. 106. Along with these documents, plaintiff includes a document which appears to be a copy of the text of a letter he sent to "Ms. Christie Boyd" of the "Baltimore Maryland EEOC Office" on September 30, 2010, ostensibly also attaching the documents he has filed at Docket Number 106. Dkt. No. 106-3. In the letter, Mr. Washington explains that:

> I have made a number of attempts to write a narrative document to show specific acts of discrimination in order to make it clear that from the very first day of my employment until the present, I was subjected to intentional and continuous patterns of discrimination. This process becomes unwieldy. Instead it seems best to simple [sic] point to some of the specific pages that may be considered most important to assist you in drafting the charge. Please look primarily at the documents starting at page 229 forward. These pages include, inter alia, various motions and the two transcripts of sworn testimony before the Pennsylvania Unemployment Compensation Board of Review (the Board's ultimate findings in my favor must be given due deference - see pages 288 through 293), various communications to my employer complaining about discrimination, harassment, etc.

<u>Id.</u>

In addition, in briefs Mr. Washington has filed in response to defendants' motions to dismiss plaintiff's third amended complaint, he makes factual assertions which the Court is hard-pressed to locate anywhere in his third amended complaint or the attachments thereto (although they appear to overlap with assertions plaintiff made in his previous responses to defendants' prior motions to dismiss). These assertions include plaintiff's claim that his supervisor commented that "nobody was going to believe that someone who looks like the Plaintiff actually served in Air Force Intelligence or attended Princeton University." Dkt. No. 116 at ECF p. 2. Plaintiff also contends that he "informed [his supervisor] that Plaintiff had numerous handicap/disabilities including stuttering, hand-eye coordination problems, irregular heartbeat,

asthma, etc. . . . ." Id. Plaintiff contends that upon his assignment to Amtrak, "[o]nce [his supervisor] saw that Plaintiff was an older Negro male with multiple handicap conditions he made every effort to prevent Plaintiff from ever freely enjoying the same rights and privileges afforded to his non-Negro coworkers." Dkt. No. 126 at ECF p. 3. He asserts that when he asked "for a modern workstation, laptop and telephone," he was told "I don't know what the hell [your supervisor] was thinking about when he brought a Negro boy like you into the Amtrak Engineering department, but you gets nothing here." Dkt. No. 119 at ECF p. 4. He also asserts that he was "segregated . . . from participating in many of the normal staff meetings." Id. at ECF p. 7. He claims that a supervisor "and others repeatedly denied Plaintiff access to network, equipment and other resources, interfered with normal necessary business interactions with managers, administrator and other employees, and subjected him to verbal and written threats and criticism. Id. at ECF p. 6. Plaintiff claims that he "was subjected to even more intense discrimination and retaliation" after he received a "secret" salary increase and was "forced to resign following direct harassment by his coworker and to escape physical violence orchestrated by Amtrak and CNSI managers." Id. None of these assertions are in the body of Mr. Washington's third amended complaint.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of a claim," and "show[ ] that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 8(d)(1) provides that each averment must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Taken together" these rules "underscore the emphasis placed on clarity and brevity by the federal pleading rules." In re: Westinghouse Sec. Litig., 90 F.3d 696, 702 (3d Cir. 1996) (citation omitted). "Rule 8(a) requires parties to make their pleadings straightforward, so

that judges and adverse parties need not try to fish a gold coin from a bucket of mud.'" Cohen v. Wagner, No. 13-674, 2014 WL 199909, at *5 n.5 (E.D. Pa. Jan. 16, 2014), quoting United States ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003). "Neither the Court nor defendants should be required to shift through . . . allegations to piece together . . . claims." Rizzo v. Connell, No. 10-4136, 2012 WL 1937384, at *4 (D.N.J. May 29, 2012) (citation and internal quotations omitted); see also Jennings v. Emry, 910 F.2d 1434, 1436 (7th Cir. 1990) (holding that a complaint must "be presented with sufficient clarity to avoid requiring a district court or opposing party to forever sift through its pages . . . "). Dismissal of a complaint pursuant to Rule 8 is proper when it "le[aves] the defendants having to guess what of the many things discussed constituted [a cause of action]." Binsack v. Lackawanna Cnty. Prison, 438 F. App'x 158, 160 (3d Cir. 2011).

Dismissal of a complaint is warranted under Federal Rule of Civil Procedure 12(b)(6) when a claimant fails to sufficiently state a claim upon which relief can be granted. To avoid dismissal under Rule 12(b)(6), a complaint must provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "'nudge his or her claims across the line from conceivable to plausible.'" Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008), quoting Bell Atlantic Co. v. Twombly, 550 U.S. 544, 556 (2007). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679, quoting Fed. R. Civ. P. 8(a)(2). In evaluating defendants' motions, the Court must separate the legal and factual elements of plaintiff's claims,

accept the well-pleaded factual allegations as true and disregard any legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). Where, as here, plaintiff is proceeding pro se, the Court has "an obligation to construe the complaint liberally." Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

## DISCUSSION[4]

Plaintiff's third amended complaint "stretches compliance with Rule 8's pleading requirement to the limits." Aristeo v. Raines, No. 15-4115, 2016 WL 43050568, at *2 (D.N.J. Feb. 3, 2016) (considering the plaintiff's "formidable" 59 page amended complaint with 85 pages of exhibits). As was the court in Aristeo, this Court "is somewhat tempted to dismiss the [third] Amended Complaint [simply] for failing to provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" id., citing Fed. R. Civ. P.(8)(a)(2), particularly given this Court's prior Order. See Dkt. No. 87. However, in view of the lengthy history of this matter, it seems prudent to proceed to consider whether plaintiff's third amended complaint states a plausible claim for relief against either defendant. The Court finds that it does not.

In reaching this conclusion, the Court declines to consider those facts which plaintiff has not specifically alleged in his third amended complaint. Prior to remand, the Court of Appeals

---

[4] Given the Court of Appeals' holding that "it would be premature to resolve the timeliness and adequacy of Washington's submission to the EEOC at this stage," Washington, 590 F. App'x at 129, the Court declines to here consider whether plaintiff has properly exhausted his claims. Likewise, the Court declines to here consider whether Amtrak was Mr. Washington's "employer." See id. at 130 (explaining that the issue "may generally require resolution at the summary judgment stage, rather than at the motion to dismiss stage") (citation and internal quotation omitted).

noted that Mr. Washington "made several specific factual assertions in his" brief responding to defendants' motions to dismiss his second amended complaint and thus suggested that this Court should consider whether Mr. Washington's claims "warranted leave to amend on the merits in light of the assertions contained in his brief or otherwise."[5]  Washington, 590 F. App'x at 132. Plaintiff has now had an opportunity to amend his claims.  See Dkt. No. 87.

Even after having had substantial time to prepare his amended claims and having been given specific instructions to conform his amended claims to the dictates of the pleading rules set forth in the Federal Rules of Civil Procedure, the "facts" alleged through the attachments Mr. Washington filed in conjunction with his third amended complaint remain "so excessively voluminous and unfocused as to be unintelligible."  Binsack, 438 F. App'x at 160.

Plaintiff makes clear that he understood that the Court "specifically warned Plaintiff that there would be consequences if his Third Amended Complaint was not short and concise."  Dkt. No. 126 at ECF p. 2.  He contends that he "respectfully complied with this Order," citing his "Third Amended Complaint with the incorporated 294-page attachment . . . ."  Id.  Despite the lengthy attachment, however, plaintiff again reserves his more "specific factual assertions," Washington, 590 F. App'x at 132, for his responses to defendants' motions to dismiss.  Plaintiff argues that "[d]efendants know that amendment of complaint [sic] may be necessary for incorporation of matters addressed in Response and/or other pleadings" and thus "moves the Court to treat his Pro Se Complaints, and/or other filings and pleadings as 'the Complaint.'"

---

[5]  In his response to Amtrak's motion to dismiss, plaintiff seizes on this statement, arguing that "[a] casual reading of the Third Circuit Mandate remanding this action back to the District Court reveals that the higher Court easily found an untold number of truffles in the several inserts and attachments to plaintiff's filings."  Dkt. No. 126 at ECF p. 2.  But as our Court of Appeals has explained, "'[j]udges are not like pigs, hunting for truffles buried in' the record."  Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006), quoting United States v. Dunkel, 927 F.2d 955, 756 (7th Cir. 1991)).

Dkt. No. 126 at ECF p. 2. The Court declines to abide by Mr. Washington's request. See Pa. ex rel. Zimmerman v. Pepsico, 836 F.2d 173 (3d Cir. 1988) (finding that plaintiffs cannot amend their complaints through responsive briefs); Hammond v. City of Phila., No. 00-5082, 2001 WL 82367, at *2 (E.D. Pa. June 29, 2001) ("A party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion."); see also Cohen, 2014 WL 199909, at *5 n.5 (declining to consider the plaintiff's supplements to his complaint and other filed documents because "when read in conjunction with his complaint and/or amended complaint, they do not constitute a 'short and plain statement' required by Rule 8(a)(2)") (citations omitted).

While the Court is sensitive to Mr. Washington's pro se status, as the Court of Appeals has explained, "there are limits to our procedural flexibility. . . . At the end of the day, [pro se litigants] cannot flout procedural rules – they must abide by the same rules that apply to all other litigants." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). "'[E]xtending too much procedural leniency to a pro se litigant risks undermining the impartial role of the judge in the adversary system.'" Id., quoting Julie M. Bradlow, Comment, Procedural Due Process Rights of Pro Se Civil Litigants, 55 U. Chi. L. Rev. 659, 671 (1988).

As is further set forth below, those allegations which are set forth in Mr. Washington's third amended complaint remain insufficient to withstand defendants' motions to dismiss.

**I.     Claims Pursuant to Title VII, the PHRA, Section 1981 and the ADEA**

Plaintiff claims that defendants "discriminated, retaliated, subjected him to a hostile and dangerous work environment, because of his race, color, sex, religion, age, national origin and other similarly prohibited considerations . . . ." Dkt. No. 104 at ECF p. 3. "Although a plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently permit the court to infer more than the mere possibility of

-12-

misconduct." Guirguis v. Movers Specialty Servs., Inc., 346 F. App'x 774, 776 (3d Cir. 2009) (citations omitted).  To support his discrimination claims, plaintiff makes only conclusory allegations that

> [d]efendants' conduct constitutes discriminatory animus, disparate treatment, reprisal, retaliation and/or hostile work environment . . . because of and/or with respect to my race (nappy headed American Negro descendant of African slaves), my national origin/ancestry (American Negro descendant of African slaves), my color (brown skinned), my sex/gender (straight male), my age (over fifty years of age), my religion (faith based on the belief that Jesus Christ is Lord, Savior and a high priest of the Order of Melchisedec).

Dkt. No. 104 at ECF p. 2.  This is not enough.  See McCall v. Aker Phila. Shipyard, Inc., No. 15-5742, 2016 WL 454405, at *3 (E.D. Pa. Feb. 5, 2016) (dismissing the plaintiff's complaint where it "includes bare-bones allegations that leave the Court unable to adequately assess the sufficiency of each of the asserted claims").  As Amtrak argues, plaintiff's allegations "say nothing about how, when or why Plaintiff was the victim of discrimination, harassment or retaliation . . . ." Dkt. No. 109-1 at ECF p. 19.

Plaintiff's third amended complaint includes no specific factual allegations to support a plausible claim that defendants' actions were in any way motivated by Mr. Washington's race, color, ancestry, religion, or national origin.  Nor does he aver sufficient facts to support claims based upon purported comparator employees.  See, e.g., id. at ECF p. 3-4 (identifying other employees and claiming that defendants gave "preferential treatment to each of these other employees including benefits, hiring, promotions, training and all other aspects of employment . . .").  It follows that he alleges no facts in the body of his third amended complaint which would permit the court to make the requisite inference of discrimination.  See Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004), as amended (Dec. 20, 2004) (citations and internal quotation omitted) ("Although the prima facie elements of a discrimination claim

vary depending on the particular facts of the case, . . . the plaintiff must generally . . . raise[ ] an inference of discrimination."). "A plaintiff's minority status and adverse action do not alone raise the required inference of discrimination." Lei Ke v. Drexel Univ., No. 11-6708, 2013 WL 1092661, at *9 (E.D. Pa. Mar. 14, 2013). Nor is "[a] plaintiff's subjective belief that [a protected characteristic] played a role in an employment decision . . . , alone, sufficient to establish an inference of discrimination." Wilson v. Blockbuster, Inc., 571 F. Supp. 2d 641, 647 (E.D. Pa. 2008), citing Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000). Likewise, "[s]imply stating that one endured race discrimination without presenting allegations suggestive of such conduct does not meet our pleading standards." Funayama v. Nichia Am. Corp., No. 08-5599, 2009 WL 1437656 at *5 (E.D. Pa. May 21, 2009).

To the extent that Mr. Washington endeavors to assert retaliation claims pursuant to Title VII, Section 1981, the PHRA or the ADEA, they are likewise deficient. "Plaintiff neither sets forth any statutorily-protected activity nor a causal connection between such activity and any materially adverse consequence." McCall, 2016 WL 454405, at *3. Likewise, plaintiff has not set forth sufficient facts to support a hostile work environment claim. Plaintiff does not allege a single incident or remark that was remotely harassing, let alone so severe or pervasive as to alter the terms and conditions of his employment. Dkt. No. 109-1 at ECF p. 19-20; see Magerr v. City of Phila., No. 15-4264, 2016 WL 1404156, at *11 (E.D. Pa. Apr. 11, 2016) (explaining that "a complaint asserts a facially plausible hostile work environment claim only if the discrimination was alleged to be 'sufficiently severe or pervasive' to effectively alter the terms and conditions of the plaintiff's employment"), quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).

Plaintiff's third amended complaint contains nothing more than "the quintessential

unadorned, the-defendant-unlawfully-harmed-me accusation, which tenders naked assertions devoid of further factual enhancement." Eldeeb v. Potter, 675 F. Supp. 2d 521, 523-24 (E.D. Pa. 2009). Accordingly, the Court will dismiss plaintiff's Title VII, Section 1981, PHRA and ADEA claims.

## II.     ADA and Rehabilitation Act Claims

Plaintiff's third amended complaint also fails to state a claim under the ADA or the Rehabilitation Act. It does not allege that he was disabled or regarded as having a disability. Dkt. No. 104. Nor does Mr. Washington allege that he ever informed his employer of a disability or asked for an accommodation. Id. These allegations are necessary to state a prima facie case under either the ADA or the Rehabilitation Act. See Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010) ("To establish a prima facie case of discrimination, a plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination."); Goodwin v. Renewal, Inc., No. 11-770, 2012 WL 1428865, at *5 (W.D. Pa. Apr. 24, 2012) ("A viable RA claim contains essentially the same elements as an ADA claim, but includes the additional requirement that the program or activity from which the plaintiff is excluded receives federal financial assistance."); see also McDonald v. Com. of Pa., Dep't of Pub. Welfare, Polk Ctr., 62 F.3d 92, 95 (3d Cir. 1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same."). The Court will dismiss plaintiff's ADA and Rehabilitation Act claims.

## III.    Equal Pay Act Claim

In order to maintain a claim under the Equal Pay Act, a plaintiff "must first establish a

prima facie case by demonstrating that employees of the opposite sex were paid differently for performing 'equal work' – work of substantially equal skill, effort and responsibility, under similar working conditions." Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000), citing E.E.O.C. v. Del. Dep't of Health & Social Servs., 865 F.2d 1408, 1413–14 (3d Cir. 1989). Plaintiff does not complain about unequal pay based on his gender in his third amended complaint. (Indeed, he does not specifically discuss pay at all.). The Court will dismiss his Equal Pay Act claim.

**IV.  Other Claims**

Finally, in his third amended complaint Mr. Washington asserts a number of other causes of action for the first time, including claims for: (1) violations of the "Constitutions of the United States and the State of Pennsylvania and amendments thereto (First, Fourth, Fifth, Thirteenth and Fourteenth Amendments);" (2) 42 U.S.C. "1982, 1983, 1985, 1986, and 1988"; (3) "the Hobbs and Sherman Acts"; and (4) "the Racketeer Influenced and Corrupt Organizations Act (RICO) section 901(a) of the Organized Crime Control Act of 1970 (Pub.L. 91-452, 84 Stat. 922, enacted October 15, 1970)". Dkt. No. 104 at ECF p. 1. Amtrak argues that "[t]hese claims have no application even to the bare facts in Plaintiff's Third Amended Complaint." Dkt. No. 109-1 at ECF p. 23. It contends that it "can only guess what claims Plaintiff is trying to assert, for example, under the various constitutional amendments he identifies based on his conclusory statements in the Complaint." Id. Likewise, CNSI moves to dismiss plaintiff's RICO claim, his claims under 42 U.S.C. §§ 1982, 1983, 1985, 1986 and "any other causes of action" which plaintiff attempts to plead. Dkt. No. 108-1 at ECF p. 26-31.

The Court finds that plaintiff has not pled sufficient facts to support plausible claims under any of the cited provisions. Mr. Washington has not alleged facts which would show that

defendants have deprived him of his rights under Section 1982 (race discrimination and property rights), Section 1985 (civil conspiracy) or Section 1986 (predicated on a violation of Section 1985).  Further, Section 1988 does not create an independent cause of action.  Moor v. Cnty. of Alameda, 411 U.S. 693, 702-03 (1973).  Nor has Mr. Washington made any allegations to support a claim that defendants should be held liable pursuant to Section 1983 for alleged violations of his rights under the First, Fourth, Fifth, Thirteenth or Fourteenth Amendments.  He has not set forth a violation of his rights under the Pennsylvania Constitution.  Likewise, Mr. Washington has not alleged facts sufficient to show that defendants engaged in racketeering.  His allegations in no way support a claim that defendants should be held liable under the Hobbs Act (prohibiting actual or attempted robbery or extortion affecting interstate or foreign commerce) or the Sherman Act (a federal anti-monopoly and antitrust statute).  Mr. Washington's allegations stop well "short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678, citing Twombly, 550 U.S. at 557.  The Court will dismiss all of these claims.

**V.    Leave to Amend**

"Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).  But the "Court 'has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them.'" Franks v. Food Ingredients Int'l, Inc., No. 09-3649, 2010 WL 3046416, at *8 (E.D. Pa. July 30, 2010), quoting Krantz v. Prudential Invs., 305 F.3d 140, 144 (3d Cir. 2002).  Likewise, "if the court determines that plaintiff has had multiple opportunities to state a claim but has failed to do so, leave to amend may be denied." Harris v. Corbett, No. 12-01, 2014 WL 580150, at *8 (W.D. Pa. Feb. 12, 2014), aff'd sub nom. Harris v. Governor of Pa., 578 F. App'x 105 (3d Cir. 2014) (citation omitted).

Both Amtrak and CNSI argue that Mr. Washington should not be granted leave to amend his complaint.  See Dkt. No. 123 at ECF p. 2-3; Dkt. No. 117 at ECF p. 5-9.  The Court agrees. Plaintiff has been "afforded several opportunities to cure the deficiencies in his complaint, with the court providing him detailed instructions relative to his obligations in this respect.  Despite these opportunities, Plaintiff consistently failed to plead a viable legal claim . . . ."  Harris, 2014 WL 580150, at *8.  Almost eight years after plaintiff resigned from his employment on May 5, 2008 and more than four years after he first filed this action on March 1, 2011, the Court finds that granting leave to amend would be futile under the circumstances.  All of Mr. Washington's claims against defendants will be dismissed with prejudice.

An appropriate Order follows.